ROSS, The HATTIE. See Case No. 2,598.

ROSS (HOLBROOK v.). See Case No. 6,592.

---

## Case No. 12,075.

### ROSS v. HOLTZMAN.

[3 Cranch, C. C. 391.] [1]

Circuit Court, District of Columbia. Dec. Term, 1828.

TAXATION—DISTRESS FOR TAXES—UPON WHAT LEVIED—IN WHAT RIGHT.

1. The personal estate of the testator is not liable for taxes accruing upon his real estate in Georgetown, D. C., after his death; but is liable for the taxes upon his personal estate.

2. A distress is not a judicial process.

3. One distress may be made for taxes due to the corporation and to the county, if made by the same collector.

4. A distress is the private remedy of the party entitled to the rent, toll, service, tax, or other duty, for which the tenant or debtor is liable.

5. When the party who has made the distress comes to answer for it, he may justify in different rights, by several avowries, and thus bring each right distinctly before the court.

Replevin. Case stated. The plaintiffs' testator died in January, 1822. His executors sold his personal estate after this distress, that is, after May 30, 1827. The taxes, for which the distress was levied, became due to the corporation of Georgetown upon his real estate, for the years 1821, 1822, 1825, and 1826; and to the levy court, for the county tax for 1826. The plaintiffs paid the tax for 1821, at the time of taking out the replevin. The negro distrained was part of the personal estate of the testator, found upon the premises, that is, in the dwelling-house on Bridge street, in which the testator lived and died; which house, with the personal property therein, had, from the death of the testator to the time of levying the distress, been in the use and occupation of S. J. Potts, one of the plaintiffs, who married one of the heirs of the testator, and who was appointed guardian of the infant heirs, and with whom all the children of the testator, except three, lived from his death till May 12, 1827, when the premises were taken possession of by the Bank of the United States, and sold. During all which period Mr. Potts received the rents and profits of the estate. The whole of the real estate had been conveyed by the testator, in his lifetime, in trust, to secure a very large debt due to the Bank of the United States. If, upon these facts, the court should be of opinion that the property distrained was liable for the said taxes, or any thereof, with expenses, &c., judgment to be for the defendant; otherwise, for the plaintiffs.

Marbury & Coxe, for plaintiffs.

Dunlop & Key, for defendant.

[1] [Reported by Hon. William Cranch, Chief Judge.]

CRANCH, Chief Judge, after stating the case, delivered the opinion of the court (nem. con.) as follows:

The taxes, which accrued in the lifetime of the testator, having been paid since the distress, the principal question is, whether the personal assets of the testator, found upon the premises, is liable to distress for taxes on the real estate, which became due to the corporation of Georgetown, or to the levy court, after the death of the testator. By the act of congress of the 26th of May, 1824, § 8 (4 Stat. 75), it is enacted "that it shall be lawful to collect said taxes," (that is, corporation taxes of Georgetown,) "by distress and sale thereof," (that is, of the personal estate of the "owner or tenant" of the real estate.) This applies only to taxes thereafter to fall due, as appears by the expressions "in all cases hereafter," in section 7, and "hereafter to fall due," in section 10. But the 10th section impliedly gives the same remedy, "where any taxes have fallen due and yet remain unpaid;" for it authorizes the corporation of Georgetown "to collect said taxes by sale of the real estate liable, agreeably to the provisions of this act, in relation to other cases of collecting taxes hereafter to fall due;" that is, to sell the real estate, when the owner or tenant has not sufficient personal estate out of which payment may be enforced. This is the only law produced to the court, by which the taxes can be collected by distress and sale of personal property.

The question then is, whether negro Lewis was the personal property of the owner or tenant of the real property, on account of which the tax became due. This negro did not belong to the Bank of the United States, but was assets in the hands of the executors of A. Ross, liable to the payment of his debts. The taxes were not a debt due from him, for which those executors, or those assets, were liable. The executors, as such, were not owners of the real estate, nor had they any right to apply the personal assets to the payment of taxes upon the real estate, accruing after the death of their testator. Those assets were to be applied by them, in the course of their administration, to the payment of the debts of their testator, or his legacies, or to those who might be entitled to the surplus, in the course of distribution, if not disposed of by the will. The testator directed that, for payment of his debts, a certain part of his real estate should be sold, at such time and place as his executors should deem most proper and fit; but does not say by whom the estate should be sold. He then directs that if that part of his real estate should not be sufficient to pay his debts, the residue should be paid out of the personal estate. As to the residue of his real estate,

he directs that it should be held for ten years by his children and nieces in equal proportions; and that, at the expiration of that period, it should be sold and divided among his children. The executors, as such, had no interest in the real estate; at most, they had a naked power to sell, as trustees. The fee descended to the heirs at law, but the personal estate vested in the executors. The negro Lewis, therefore, was not the property of the owner of the real estate, nor was he the property of the tenant. That tenant, indeed, was one of the executors; but, as tenant, he did not own the slave. He claimed him in another right; not as his property, but as the property of the executors, to be applied to the payment of the debts of the testator. As the property distrained was not the property of the owner of the land, the judgment, on the case stated, must be for the plaintiff. No law is shown which authorized the collector of the county tax to seize the personal property of any person, but him who was debtor for the tax.

CRANCH, Chief Judge. After the opinion of the court was given upon the principal point, it was suggested that a part of the taxes, for which the distress was levied, was a corporation tax of $10.24, upon personal property of the estate of the testator, A. Ross, in the hands of the executors, for the year 1822; and a county tax on the same personal property, of $1.80, for the year 1826; that there can be no objection to the distress for these taxes upon the personal property; and that, by the case agreed, if the distress was valid for any part, judgment is to be entered for the defendant, for the amount of the tax for which he had a right to distrain.

No objection has been made to the distress for the taxes upon the personal estate, but this: That the defendant, being collector for both county and corporation taxes, made one undivided distress for the taxes due in both rights. A distress is not a judicial process. It is the private remedy of the party entitled to the rent, toll, service, tax, or other duty, for which the tenant or the debtor is liable. When the party who has made the distress comes to answer for it, he may justify in different rights, by several avowries, and thus bring each right distinctly before the court. This is an objection to the form rather than to the merits of the case, and I presume was not contemplated when the case was agreed for the consideration of the court, as it does not appear in that statement. The court being of opinion that the defendant had a right to distrain the replevied property for the amount of the taxes due upon the personal estate, the judgment must be for the defendant, for that amount. The other judges concurred.