UNITED STATES *v.* CAMERON and others.*

(*Circuit Court, E. D. Missouri.*   April 7, 1883.)

1. DEPOSITIONS IN CRIMINAL CASES—Rev. St. § 866.
    Section 866 of the Revised Statutes, which authorize a *dedimus potestatem* to take depositions according to common usage, to be issued in any case in which it is necessary, in order to prevent a failure or delay of justice, applies to criminal as well as civil cases.

2. SAME—"COMMON USAGE."
    The words "common usage," as used in said section, refer to the usage prevailing in the courts of the state in which the federal court may be sitting.

3. SAME—"FAILURE OR DELAY OF JUSTICE."
    The question whether the order is necessary in order to prevent a "failure or delay of justice" is for the court to determine in each case upon the facts presented.

4. SAME.
    Where witnesses for the defendants, whose testimony was material, resided hundreds of miles beyond the limits of the district in which the case was to be tried, and where the defendants were unable to pay the cost of bringing them to the place of trial, *held*, that the necessity for making an order for a *dedimus potestatem* to take their depositions sufficiently appeared.

Indictment for Conspiracy to Defraud the United States of 100,000 acres of land.   Motion of defendants for a *dedimus potestatem* to take the depositions of witnesses residing in Iowa, Wisconsin, and Dakota.

*William H. Bliss,* Dist. Atty., for the Government.

*Dyer, Lee & Ellis,* for defendants.

McCRARY, J.   Section 866 of the Revised Statutes of the United States provides that "in any case where it is necessary, in order to prevent a failure or delay of justice, any of the courts of the United States may grant a *dedimus potestatem* to take depositions according to common usage.   *   *   *"

The district attorney insists that this statute does not authorize the action called for by the present motion; and he has, in a learned and elaborate argument endeavored to establish the proposition that this statute applies only to civil causes.   We do not concur in this view.   Under the terms of the statute a *dedimus* may issue "in *any case* where it is necessary, in order to prevent a failure or delay of justice," not in any civil case, nor in any case at common law, in equity or in admiralty, but in "any case" which includes criminal as

*Reported by B. F. Rex, Esq., of the St. Louis bar.

well as civil proceedings. This provision was originally enacted as a proviso to section 30 of the judiciary act of 1789, as follows:

"Provided that nothing herein shall be construed to prevent any court of the United States from granting a *dedimus potestatem* to take depositions according to common usage when it may be necessary to prevent a failure or delay of justice, *which power they shall severally possess.*"

The judiciary act of which this proviso is a part was an elaborate statute relating to proceedings in the federal courts in both civil and criminal cases. If we were called upon to determine the true meaning of the proviso as it stood in the original act, the question might be to some extent doubtful. If the proviso be limited in its application to the subject-matter of the section in which it is incorporated, it would apply only to civil proceedings, while if applied to the entire act it would extend to criminal proceedings as well. It might well be argued that the proviso was intended to be as broad as the act, and to confer a power upon the courts of the United States to grant a *dedimus* in any case, civil or criminal, when necessary to prevent a failure or delay of justice. The words "nothing herein" in the proviso might well be construed as equivalent to the words "nothing in this act." This would be the broader and more liberal construction; and in a case where the benefit of the statute is invoked in favor of a person accused of crime, we think it should be so construed. But, however this may be, we are entirely clear that congress, in the enactment of the Revised Statutes of the United States, has adopted this interpretation by enacting the words of the proviso as a separate and independent section, and by so changing the form and phraseology of it as to leave no room for doubt. The provision now appears in the form first above quoted as the first clause of section 866 of that Revision. That section is incorporated into chapter 17, entitled "Evidence." The chapter deals with the general subject of evidence in both civil and criminal causes, some of its provisions referring to the latter in express terms, and others by necessary implication. The section, as it stands in this chapter, is limited only by the subject-matter of the chapter itself. The form is changed by dropping the words "provided that nothing herein shall be construed to prevent any of the courts of the United States from granting a *dedimus potestatem,*" and by inserting instead the words "in any case where it is necessary," etc. The intent to make the power general and applicable to all cases seems to us to be very apparent.

The case falls, therefore, within the terms of the statute, unless it is excluded by the latter part of the clause above quoted, which is as

follows: "Any of the courts of the United States may grant a *dedimus potestatem* to take depositions according to common usage." What are we to understand by the words "common usage?" We think the better opinion is that they refer to the usage prevailing in the courts of the state in which the federal court may be sitting. They mean common usage in the courts which administer justice in the same community. They cannot mean a usage known and recognized only at common law, as we think, because at the time when the statute was enacted it was common usage to take depositions under statutes, and at the present time any other practice in the courts of the states is practically unknown.

Sound policy undoubtedly demands that a party accused of crime in a federal court shall have the same rights with respect to obtaining evidence in his defense as are enjoyed by persons accused in the state tribunals. We think the statute should be interpreted, in the spirit of this policy, in favor of the accused. It is, besides, to our minds quite improbable that the words "common usage" would have been employed by the author of the judiciary act of 1789 as synonymous with "common law."

That act, as is well known, was drawn with great care and skill, and if it had been intended to limit the power to issue a *dedimus* to cases where it was authorized by the common law, this intent would have been expressed in unequivocal terms. The words "common usage" are never employed by accurate writers as equivalent to "common law."

In the case of *Buddicum* v. *Kirk*, 3 Cranch, 393, this provision of the act of 1789 is construed by reference to the laws of Virginia regulating the taking of depositions, and the suggestion that the words "common usage" referred to, "common law," and not to usage sanctioned or authorized by statute, was not made. The case of *U. S.* v. *Reid*, 12 How. 361, relied upon by the district attorney, decides that the thirty-fourth section of the judiciary act, adopting state laws as rules of decision in federal courts, applied only to civil action at common law. By its terms it was made applicable only to "trials at common law," and these words were held not to include a criminal prosecution. It was also held that in the trial of a criminal cause held in one of the original 13 states the admissibility of evidence depended, under the judiciary act, upon the law of the state where the trial was held, as it was at the time of the passage of that act in 1789. This rule, however, has never been applied to the states admitted into the union after the passage of the judiciary act, nor can

it be, for the reason that a state can have no laws prior to its existence as a state. But we are not dealing with the thirty-fourth section of the judiciary act, but with section 866 of the Revised Statutes of the United States, which, in its present form, became the law of the land in 1874; and, for the purposes of the question now before us, we are, we think, justified in holding that the words "common usage," as found in this section, refer to the usual and customary mode of proceeding at the time of the adoption of the Revision, which for many purposes, and we think for this purpose, must be regarded as an original enactment. Such being the true construction of the statute, we are at liberty to look into and follow the common usage of the courts of Missouri in similar cases, whether sanctioned by common law or statute. Upon looking into the laws of Missouri and the practice of her courts, we find for many years they have authorized the taking of depositions in criminal cases on behalf of the defense, and that for perhaps half a century such has been the common usage in this state. The question whether the order is necessary to prevent a failure or delay of justice is for the court to determine in each case upon the facts presented.

In the present case we are of the opinion that the necessity sufficiently appears. The witnesses reside hundreds of miles from the place of trial, their testimony appears to be material, the defendants are unable to pay the cost of bringing them here to testify, and the court has no authority to pay this expense from the public treasury, because the witnesses reside beyond the limits of the district. We do not say that all these facts must necessarily appear, but we are clearly of the opinion that, appearing, they are sufficient.

It is to be observed that it is enough if the court is satisfied that the taking of depositions will prevent delay of justice. This is a wise provision, for without it the trial of criminal causes might be postponed indefinitely. No court would be inclined to force a defendant to trial in the absence of his witnesses, and without their testimony. If they reside in a distant state, and the defendant is a poor man, what is to be done? The government will not, and the defendant cannot, produce them. A subpœna may be issued and duly served; but would any court compel a witness to travel at his own expense to a state far distant from his home in order to give testimony? If so, what is to be done if the witness is unable to pay the expense of the journey?. If the court cannot order depositions to be taken, and the witnesses are duly served and fail to appear, the cause for continuance would seem to be sufficient, and it might recur at every term of

the court during the life-time of the defendant. In such a case it is clearly necessary to prevent a delay, if not a failure, of justice, that the order for a *dedimus* should be made.

It is insisted that this construction of the statute will enable defendants in criminal cases to manufacture evidence by taking depositions of accomplices and others, who will swear falsely; but the danger in this direction is little, if any, greater than that which would exist if the witnesses were all produced in court, for the government can always cross-examine, and its attorney can readily ascertain, the reputation for truth and veracity of witnesses examined, and, if it is bad, can show it to be so upon the trial. On the other hand, if depositions cannot be taken, the danger of doing injustice to defendants in some cases would be very great indeed. The life or liberty of a party accused may depend upon the testimony of a witness thousands of miles away from the place of trial, and whose presence there cannot be procured, because the government will not pay the expense, and neither the witness nor the accused is able to do so.

It is also suggested that witnesses examined under a *dedimus* issued in a criminal case are not liable to the pains and penalties of perjury; but this argument presupposes that there is no authority of law for taking testimony in such cases by deposition, which, in our opinion is not so.

The result is that the motion in this case must be granted, and it is so ordered.

TREAT, J., concurs.