**UNITED STATES v. HOFMANN et al.**

District Court, S. D. New York.
Aug. 31, 1938.

848

Lamar Hardy, U. S. Atty., of New York City (Lester C. Dunigan and John W. Burke, Jr., both of New York City, of counsel), for plaintiff.

George C. Dix, of New York City, for defendant Johanna Hofmann.

HULBERT, District Judge.

The defendant Johanna Hofmann seeks an order directing the issuance of letters rogatory to Germany and Czechoslovakia *or* a commission to designated United States Consular representatives in those countries to examine nine proposed witnesses specified by name, or such of them, and such additional persons as her counsel may determine in the progress of the examination.

On June 20, 1938 the Grand Jury of this District returned two indictments, one charging conspiracy *to transmit,* and the other *unlawfully delivering* certain information to a foreign government, relating to the National Defense of the United States, in violation of statute. Title 50 U.S.C.A. §§ 32 and 34.

In the first indictment above referred to Johanna Hofmann is named with Carl Schluter, Ignatz T. Griebl and two other defendants, while in the latter indictment Johanna Hofmann is named with Carl Schluter and two other defendants (not including Griebl). Schluter and Griebl are two of the persons sought to be examined. Schluter is a German subject who, until recently, was domiciled in the United States and Griebl is a naturalized American citizen of German birth. Both are fugitives from justice.

It is admitted in the defendant's motion papers that Griebl was under subpoena to appear before the Grand Jury on May 5, 1938 and that he claims that an agent of the Federal Bureau of Investigation, named Turrou, informed him that ·the hearing before the Grand Jury had been postponed until May 12th and that he would receive another subpoena. Meanwhile, he sailed for Germany on May 10th and Schluter also made his departure about the same time. The defendant Hofmann is incarcerated because of her inability to furnish bail. The trial of these indictments has been set for October 4, 1938.

A previous application to take the depositions of these defendants and other witnesses was denied by Judge Leibell in an opinion dated July 19, 1938. He held in effect:

(1) That letters rogatory would not issue to take the testimony of Schluter and Griebl; (2) that the court would not grant a roving commission to examine unnamed witnesses; and (3) that, in any event, Schluter and Griebl being under indictment could not be examined except upon their own request and consent, if the Court had the power to issue a commission in a criminal action.

The present motion will be regarded as a renewal by leave of Court.

The contention that this Court is without power to enable the defendant to secure evidence abroad by proper methods is abhorrent to American instincts. "It may suit the purpose of despotic power; but it cannot abide the pure atmosphere of political liberty and personal freedom."

Amendment 5 to the Constitution of the United States, U.S.C.A.Const. Amend. 5, guarantees that no person shall be deprived of his life, liberty or property without due process of law, and Amendment 6, U.S.C.A.Const. Amend. 6, insures a defendant's right "to have compulsory process for obtaining Witnesses in his favor, and to have the Assistance of Counsel for his defence."

Compulsory process does not ordinarily extend beyond the boundaries of the United States but the excerpts of the Constitutional Amendments, above referred to, reflect the attitude of its Framers toward the preservation of personal liberties.

There are certain powers inherent in all courts and some jurists and text writers have recognized the power of courts of record in one country to furnish assistance, so far as is consistent with their own jurisdiction, to the courts of another country. Greenleaf, on Evidence (Vol. 1, Sec. 350); Benedict's Admiralty,

5th Ed. (Vol. 1, Sec. 401); In re Application of Pacific Ry. Comm., C.C., 32 F. 241; De Villeneuve v. Morning Journal Ass'n, D.C.N.Y.1913, 206 F. 70; In re Letters Rogatory out of First Civil Court of Mexico, D.C., 261 F. 652.

Of course the inherent power of the court may be restricted or enlarged by statute, and more recently (1926) by the provisions of section 712 of title 28, U.S. C.A., the Congress expressly legislated to effect jurisdiction over citizens residing abroad. Blackmer v. U. S., 284 U.S. 421, 52 S.Ct. 252, 76 L.Ed. 375.

At least three methods of taking depositions have been provided:

1. Deposition de bene esse, specifically restricted to civil suits. Title 28 U.S.C.A. § 639.

2. Deposition under dedimus potestatem and in perpetuam. Title 28 U.S.C.A. § 644.

3. Commission sub matuae vicissitudinus or letters rogatory. Title 28 U.S.C.A. §§ 653, 701 and 711 et seq.

After careful research, I have found no case, nor has my attention been called to any case by either counsel, in which letters rogatory have been issued at the behest of any private litigant in a criminal action, but there does appear to be authority for the issuance of a dedimus to take depositions outside of the United States on behalf of a defendant charged with the crime of smuggling. U. S. v. Wilder, C.C. 1882, 14 F. 393.

It is true that the court in that case acted in accordance with the laws of the State of Georgia in which the question arose. The Court said:

"At all events. the government cannot be seriously prejudiced by allowing this commission, as it will, of course, be at the expense of the defendant, and its admissibility will be determined on the trial."

Again in U. S. v. Cameron et al., C.C. 1883, 15 F. 794, the court had before it the propriety of the issuance of a dedimus in a criminal case under R.S. § 866 from which Section 644 of Title 28 U.S.C.A. was derived.

The statute in its present form is substantially the same. The Court there said:

"Under the terms of the statute a dedimus may issue 'in any case where it is necessary, in order to prevent a failure or delay of justice,' not in any civil case, nor in any case at common law, in equity or in admiralty, but in 'any case' which includes criminal as well as civil proceedings."

That case has never been *specifically* disapproved although Luxenberg v. U. S., 4 Cir., 1930, 45 F.2d 497, is cited to the contrary. The Court in that case did say:

"It was early determined that no power existed in the federal courts to order the taking of depositions in criminal cases. U. S. v. Thomas, Fed.Cas.No.16,476."

Upon examination of the Thomas Case, C.C.D.C.1847, I find there the statement:

"Cranch, Chief Judge, refused the granting of a commission to take the deposition of the *absent* witness. In their opinion the court had no power to issue a commission in a criminal case, *when the witness was within the jurisdiction of the court,* and this court has coercive power in the state of Missouri and all over the Union." (Italics mine.)

In Tom Ung Chai v. Burnett, 9 Cir., 25 F.2d 574, certiorari denied 278 U.S. 614, 49 S.Ct. 19, 73 L.Ed. 538, one of the errors assigned on appeal was the refusal of the court to issue a dedimus to China to take the testimony of the mother of a deportee to establish his birth in the United States.

While the issue in that case was civil and not criminal and the court below was sustained upon the ground that it had not abused its discretion in denying the application for a dedimus, U. S. v. Cameron, supra, was cited and recognized.

Therefore, it would appear to be settled that the court has the power to issue a commission to permit the defendant to take the depositions of the witnesses desired to be examined in this case, but it is essential that the defendant shall have established the necessity therefor in order to prevent a failure or delay of justice, and that, moreover, the burden rests upon the movant to establish that the testimony to be given is material in her defense of the matters alleged in the indictment.

This Court in its General Rules has made provisions with respect to the issuance of commissions and letters rogatory (Rules IX, X and XI) and they should be observed.

The attorney for the defendant Hofmann states in his affidavit, upon which this application is based, a general denial of his client's guilt and a copy of a cable

purported to have been received from the defendant Griebl, reading as follows:

"D38 Jul 28 AM 11 37
"DF AHG HAMBURG 1525 14 28 1705
"LC DIX SIXTYWALL NYK
"WILLING TO MAKE DEPOSITIONS AS REQUESTED AMERICAN CONSUL BERLIN
"GRIEBL."

and copy of a letter from Schluter, which reads as follows:

"Dear Mr. Dix: I am writing to you on behalf of Johanna Hofmann in order to prove her innocence in the charge of espionage. I hereby urgently request to obtain the permission to make deposition in this regard before the American Consulate in Bremen.

"To-day I arrived at Bremerhaven, I leave again to-morrow and will be back again on August 28th. At that time I shall be at the disposal of the American Consulate.

"Awaiting your kind reply, I remain, Sir,

"Yours truly
"[Sgd] Karl Schlueter."

█ This, in my opinion, is not sufficient. There should be filed with the Consular representative of the United States before whom either witness is to appear, a consent executed and acknowledged by him expressing his willingness to appear voluntarily and testify under oath.

The moving affidavit sets forth the names of other proposed witnesses residing in Germany and Czechoslovakia, respectively, but does not state the residence or place of business or any other information to indicate the connection of any of said proposed witnesses with the case· except that two are stated to be the father and brother, respectively, of a co-defendant, Rumrich.

There was presented upon the argument of the motion a typed memorandum which it was stated contained confidential information the attorney for the defendant Hofmann did not feel at liberty to state in his affidavit. But if I were to give it consideration, it is wholly insufficient to establish that the testimony of any of those seven witnesses will materially aid the defense of the defendant.

█ As to Griebl and Schluter, the moving affidavit states they are the persons to and for whom the defendant Hofmann is alleged to have carried messages and that before his departure from the United States Griebl stated to defendant's attorney that he had never received anything from, or delivered anything to, or ever spoke to Johanna Hofmann. That, in my opinion, is sufficient to show the materiality of his testimony.

The attorney for the defendant Hofmann avers that she denies that she had any knowledge of the contents of the envelopes she carried aboard the ship for Schluter, but there is no statement indicating the materiality of the testimony of the defendant Schluter.

Since this motion was argued, I am informed through the office of the attorney for the defendant Hofmann that he sailed for Germany for the purpose of interviewing the proposed witnesses. That may enable him, if he deems it advisable to do so, to supply the shortcomings in the papers upon this application.

There is, however, another matter of transcendant importance to be considered. Not alone does this motion involve the extent to which the defendant may invoke the consideration of this court, but according to German law the examination of witnesses under oath belongs to the exclusive competency of the regular courts and cannot be transferred to non-German instances, especially to foreign consular officials within the country. For the taking of depositions accordingly the American courts must secure the aid of the competent German courts and transmit their written requests for this purpose through diplomatic channels. An exception to this rule exists, however in so far as· American consuls may take depositions of citizens of their own country direct in accordance with the practice founded on Article 9 of the German-American Consular Convention of Dec. 11, 1871.

Article 278 of the Treaty between the United States and Germany, effective as of Nov. 14, 1921, imposed a clear obligation upon Germany to recognize the expatriation of her nationals. This principle was reaffirmed by Article 22 of the Treaty of Friendship, Commerce and Consular Rights negotiated between the United States and Germany dated Dec. 8, 1923. But in a note addressed by the German Government to the American Government dated April 11, 1938, it was stated the German Government would not be bound by Article 278. Our State Department,

however, has declined to accept Germany's refusal to recognize the obligations under said Article. The Treaty of Dec. 8, 1923 is still in force and has not been denounced by either contracting party.

Consequently, the pending motion presents a political rather than a judicial question, in so far as the execution of the commission sought is concerned.

The motion will be granted as to Ignatz T. Griebl, upon condition that he will file with the Consular representative before whom his testimony is to be taken, the consent hereinbefore referred to, and that the required negotiations under the existing Treaty relations between the United States and Germany are undertaken and brought to fruition, and that the passports issued to the United States Attorney, or representatives designated to represent him, are properly visaed. While the financial condition of the defendant Hofmann does not appear from the moving papers the fact of her incarceration since apprehension would indicate the possibility that she is impecunious and whether she shall bear the expense of executing the commission or any part thereof will be determined upon the settlement of the order which should also provide that the admissibility of the testimony to be given shall be left to the determination of the trial court.

The motion is in all other respects denied with leave to renew upon proper papers. Settle order on two days' notice unless agreed upon as to form.