Derrek **QUINTERO**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 08–88–00276–CR.

Court of Appeals of Texas, El Paso.

Nov. 2, 1988.

Rod Ponton, El Paso, for appellant.

Steve W. Simmons, Dist. Atty. of El Paso County, El Paso, for appellee.

Before OSBORN, C.J., and SCHULTE and FULLER, JJ.

## OPINION

OSBORN, Chief Justice.

This is an appeal from a trial court denial of habeas corpus relief in two consolidated extradition proceedings. Appellant, a fugitive from the Commonwealth of Kentucky, was seized in Juarez, Chihuahua, Mexico, by the concerted action of United States F.B.I. agents and Mexican Federal Judicial Police, not under the auspices of any Mexican arrest warrant or international treaty request for extradition. Appellant was

transported to El Paso, Texas, and turned over to Texas authorities. Upon requisition by Kentucky, a Texas governor's warrant was issued in each case.

■ At the outset, both sides argue, albeit to different conclusions, that *Ker v. Illinois,* 119 U.S. 436, 7 S.Ct. 225, 30 L.Ed. 421 (1886), *Frisbie v. Collins,* 342 U.S. 519, 72 S.Ct. 509, 96 L.Ed. 541 (1952), and *United States v. Toscanino,* 500 F.2d 267 (2d Cir.1974), do not apply to the present habeas corpus proceeding in the rendering State. The State argues that the *Toscanino* and other illegality complaints are not material to the issues of the propriety of Texas tendering Appellant to Kentucky authorities and that the due process challenge to personal jurisdiction is only cognizable by those courts in the demanding state which may be responsible for the ultimate trial on the merits of the charges against the Appellants. The State incorrectly asserts that Texas lacks sufficient personal jurisdiction over these individuals to apply the *Toscanino* analysis, and that it is only the Appellant who has invoked the judicial authority of this State. We disagree.

First, Sections 10 through 15 of the Uniform Criminal Extradition Act, Tex.Code Crim.Pro.Ann. art. 51.13 (Vernon 1979), mandate judicial involvement in the extradition process whether requested by the alleged fugitive or not. Section 10 further affords the accused the right to invoke further judicial scrutiny of the process by which he is being detained and tendered to the demanding state. The sound rationale behind *Toscanino* is that the courts of the United States and the individual states have a responsibility to insure that the integrity of neither the judicial nor executive process be tainted by government action which shocks the conscience under due process standards. By neither act nor omission should either branch of government foster such conduct on the part of state agents. That being the goal, the limited nature of Texas judicial and executive involvement in this extradition process does not preclude the application of *Toscanino* in these proceedings. Texas has personal jurisdiction over the Appellant at least to the extent of seizing him, detaining him and attempting to convey him to Kentucky authorities. Those limited functions are intimately connected with the conduct which is subject to *Toscanino* analysis. Consequently, we reject the State's notion that the issue is beyond the purview of the habeas corpus challenge to extradition.

■ In the exercise of this limited jurisdiction over the person of the fugitive, the rendering state acts on behalf of the demanding state. To the extent that *Toscanino* is applicable in both jurisdictions, so too are *Ker* and *Frisbie.* We reject the piecemeal suggestion of the Appellants that the rule of exoneration of illegal seizure expressed in *Frisbie* may only be applied by that court which tests the personal jurisdiction over the fugitive in the ultimate trial on the merits. Appellant's efforts to distinguish *Frisbie* on that basis is not persuasive.

■ In this case, there has been absolutely no suggestion of physical, mental or emotional mistreatment, much less any which would shock the conscience of court or community. We are presented solely with a complaint of illegal seizure not under affirmative sanction of law—Kentucky, Texas, United States or Mexican. Thus, Appellant may obtain no relief under the "shock the conscience-due process" test. *Toscanino; United States v. Zabaneh,* 837 F.2d 1249, 1261 (5th Cir.1988); *United States v. Lopez,* 542 F.2d 283 (5th Cir. 1976); *United States v. Lara,* 539 F.2d 495 (5th Cir.1976); *United States ex rel. Lujan v. Gengler,* 510 F.2d 62 (2d Cir.1975).

■ Appellant further suggests that his seizure was in contravention of the treaty of extradition presently existing between the United States and Mexico, and that, apart from the conscience-shocking test of *Toscanino,* this breach alone entitles him to habeas corpus relief. The argument fails for several reasons. First, all of the cited cases stand for the proposition that mere breach of law, substantive or procedural, on the part of seizing state agents will not in and of itself void the continuing exercise of personal jurisdiction over the fugitive. As Appellant recognizes

in his citation to *Valentine v. United States, ex rel. Neidecker*, 299 U.S. 5, 57 S.Ct. 100, 81 L.Ed. 5 (1936), extradition treaties are equivalent to statutes. They are, therefore, despite their international political character, not the supreme law of this land. Violation of such a treaty by an American law enforcement agent poses no greater legal issue than the violation of substantive United States laws proscribing assault or kidnapping, procedural laws proscribing warrantless seizure, common law civil proscriptions of false imprisonment or minimal assault and battery. Violations such as these, falling below the conscience-shocking level of gratuitous abusive treatment, do not, under *Toscanino* and the other cited cases, produce a due process nullification of personal jurisdiction. Nor should the mere violation of an extradition treaty do so. Such violation and the manner in which it occurred, to include participation by authorities of the foreign country, may be factored into the conscience-shocking analysis, but are not in and of themselves dispositive of the outcome.

■ We also reject the Appellant's reliance on the rule of specialty. We agree that this doctrine confers standing to complain upon the fugitive when his removal is under the auspices of an extradition treaty and the alleged violation is organic to that process. Removal dehors any such treaty and arguably in violation of the international accord is a matter of rights and conflicts between the signatory nations and not available for complaint by the fugitive. *Ker v. Illinois*, 119 U.S. at 439–445, 7 S.Ct. at 227–230, 30 L.Ed. at 423–425. Extradition treaties are a means by which nations and states obtain custody of fugitives, not means by which fugitives obtain asylum. Point of Error No. One is overruled.

■ In Point of Error No. Two, Appellant contends that the illegality of his seizure tainted his identification as the fugitive sought in the governor's warrant under the poisonous fruits doctrine. *Brown v. Texas*, 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979); *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). We need not reach such issue. The introduction of a governor's warrant, regular on its face, creates a presumption that the person taken into custody is in fact the person sought by the demanding state and named in the governor's warrant. *Ex parte Nelson*, 594 S.W.2d 67 (Tex.Crim.App.1980). The burden then shifts to the habeas corpus petitioner to show that he is not such person. This may be accomplished by testimony, by sworn affidavit or by sworn habeas corpus pleading. *Ex parte Trisler*, 605 S.W.2d 619 (Tex.Crim.App.1980); *Ex parte Scarbrough*, 604 S.W.2d 170 (Tex.Crim.App. 1980); *Ex parte Nelson*. No such affidavit was filed in this case. Nor was any evidence proffered on the identity issue. Nor was the need for identity evidence the subject of any trial or appellate complaint as to the trial court's limitation upon the evidentiary format of the hearing. As in *Scarbrough*, the petition filed by the Appellant does not assert that he is not the individual named in the governor's warrant. Consequently, identity was not raised in the court below. *Ex parte Wheeler*, 528 S.W.2d 229 (Tex.Crim.App.1975). The issue being thus precluded from appellate review, we do not reach the fourth amendment question under *Brown* and *Wong Sun*. Point of Error No. Two is overruled.

■ Point of Error No. Three complains of the lower court's action in not entertaining any evidentiary presentation apart from introduction of the governor's warrant. While the judge's approach was unique, we perceive no harm in the process. Testimony and exhibits are solely intended to establish facts in the mind of the appropriate fact finder—facts to which the governing law has been applied, leading to a legal consequence. In this case, the court accepted all factual allegations suggested by the Appellant as true, entertained suggestion by counsel of any additional factual elements supporting the claim for relief, received no further suggestions and incorporated all of the Appellant's assertions in his findings of fact and conclusions of law. As noted above, the identity issue was not raised and was not the subject of any complaint as to evidentiary curtailment. Ap-

pellant's claim to relief fails as a matter of law, not a matter of factual controversy. The evidentiary ruling of the trial court produced no harm to the Appellant. Point of Error No. Three is overruled.

The orders of the trial court authorizing extradition are hereby affirmed. This holding should not be construed as a holding by this Court that we will continue to sanction continual conduct by the F.B.I. which on its face appears to be improper and outside authorized provisions within treaties with Mexico for the return of those charged with criminal conduct in this country.