**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Emmanuel Ormand NEIL, aka Emmanuel Ormand Meil, Defendant–Appellant.**

No. 01–50459.

United States Court of Appeals, Ninth Circuit.

Submitted Sept. 10, 2002.*

Filed Nov. 20, 2002.

* This panel unanimously finds this case suitable for decision without oral argument. See Fed. R.App. P. 34(a)(2).

Michael S. Evans, Torrance, CA, for the appellant.

John S. Gordon, Ronald L. Cheng, and Lawrence H. Cho, United States Attorney's Office, Los Angeles, CA, for the appellee.

Before: SCHROEDER, Chief Judge, W. FLETCHER, Circuit Judge and WEINER,** District Judge.

WILLIAM A. FLETCHER, Circuit Judge.

Emmanuel Ormand Neil appeals his conviction for sexual contact with a minor in violation of 18 U.S.C. § 2244(a)(3) (1994). Neil is a citizen of St. Vincent and the Grenadines who was employed on a cruise ship departing from and returning to an American port. The victim, a 12–year–old girl, was a United States citizen, and the crime took place in Mexican territorial waters. Neil contends that the United States did not have extraterritorial jurisdiction over the crime. We disagree and affirm the judgment of the district court.

I

During the week of October 1–7, 2000, Neil worked as a cabin steward on the Carnival Cruise Lines ship Elation on a round-trip vacation cruise from San Pedro Harbor in California to various ports in Mexico. The Elation has Panamanian registry, and is wholly owned by Carnival Cruise Lines. The majority of passengers on the Elation's weekly round-trip cruise to Mexico are American.

During the cruise, Neil was responsible for cleaning the cabin of a 12–year–old girl. On October 5, 6, and 7, Neil felt the girl's breasts and buttocks through her clothing. At the end of the voyage, the girl's parents lodged a complaint and referral to the Federal Bureau of Investigation. Neil eventually admitted the sexual molestation and signed a written confession. After she returned to the United States, the girl missed several days of

** The Honorable Charles R. Weiner, Senior District Judge for the Eastern District of    Pennsylvania, sitting by designation.

school for psychological counseling, which cost her family approximately $2000.

In February 2001, a grand jury charged Neil with three counts of sexual contact with a minor in violation of 18 U.S.C. § 2244(a)(3). Neil filed a motion to dismiss the indictment for lack of jurisdiction, which the district court denied. Neil then filed a motion for reconsideration, which the district court also denied. Neil conditionally pled guilty to two counts of sexual contact, reserving the right to appeal the district court's jurisdictional holding. The district court sentenced him to six months in custody.

Neil timely appealed. Jurisdiction is a question of law that we review de novo. *See United States v. Garrett,* 253 F.3d 443, 446 (9th Cir.2001).

## II

■ We hold that the United States properly exercised jurisdiction. The Constitution does not bar extraterritorial application of United States penal laws. *See United States v. Felix–Gutierrez,* 940 F.2d 1200, 1204 (9th Cir.1991); *Chua Han Mow v. United States,* 730 F.2d 1308, 1311 (9th Cir.1984). However, acts of Congress generally do not have extraterritorial application unless Congress clearly so intends. *See Sale v. Haitian Ctrs. Council,* 509 U.S. 155, 173, 188, 113 S.Ct. 2549, 125 L.Ed.2d 128 (1993); *EEOC v. Arabian Am. Oil Co.,* 499 U.S. 244, 248, 111 S.Ct. 1227, 113 L.Ed.2d 274 (1991) ("We assume that Congress legislates against the backdrop of the presumption against extraterritoriality.").

■ We undertake a two-part inquiry to determine whether extraterritorial jurisdiction is proper. First, we look to the text of the statute for an indication that Congress intended it to apply extraterritorially. Second, we look to the operation of

the statute to determine whether the exercise of extraterritorial jurisdiction comports with principles of international law. *See United States v. Hill,* 279 F.3d 731, 739 (9th Cir.2002); *Felix–Gutierrez,* 940 F.2d at 1204. Because the statute in question here explicitly applies outside the United States and because exercising jurisdiction does not offend any principle of international law, we hold that extraterritorial jurisdiction is proper.

We look first to the text of the statute to determine whether Congress intended it to apply extraterritorially in this case. *See United States v. Bowman,* 260 U.S. 94, 97–98, 43 S.Ct. 39, 67 L.Ed. 149 (1922); *United States v. Vasquez–Velasco,* 15 F.3d 833, 839 (9th Cir.1994). The text of § 2244(a)(3), the statute under which Neil was convicted, specifically invokes the "special maritime and territorial jurisdiction of the United States." It provides, in relevant part:

> (a) *Sexual conduct in circumstances where sexual acts are punished by this chapter.*—Whoever, in the special maritime and territorial jurisdiction of the United States or in a Federal prison, knowingly engages in or causes sexual contact with or by another person, if so to do would violate—
>
> . . . .
>
> (3) subsection (a) of section 2243 of this title had the sexual contact been a sexual act, shall be fined under this title, imprisoned not more than two years, or both.

18 U.S.C. § 2244(a)(3). Section 2243(a)(1), in turn, prohibits "knowingly engag[ing] in a sexual act with another person who has attained the age of 12 years but has not attained the age of 16 years." *Id.* § 2243(a)(1). Like § 2244, § 2243 applies in the "special maritime and territorial jurisdiction of the United States." *Id.* § 2243(a).

■ Congress has defined the "special maritime and territorial jurisdiction of the United States" as including, "[t]o the extent permitted by international law, any foreign vessel during a voyage having a scheduled departure from or arrival in the United States with respect to an offense committed by or against a national of the United States." 18 U.S.C. § 7(8). The criminal sexual contact between Neil and the victim occurred on a foreign vessel that departed from and arrived in the United States, and the victim was a United States national. This conduct thus falls squarely into the definition of special maritime and territorial jurisdiction set out in § 7(8).

■ It remains to examine whether the exercise of jurisdiction by the United States in this case would violate international law. In general, we consult international law as part of our analysis of statutes that do not make explicit their intent to exercise extraterritorial jurisdiction. *See Hill*, 279 F.3d at 739; *Felix–Gutierrez*, 940 F.2d at 1205. In this particular case, we consult international law because the text of the statute qualifies the grant of extraterritorial jurisdiction by providing that such jurisdiction is available only "[t]o the extent permitted by international law." *See* 18 U.S.C. § 7(8).

■ International law supports extraterritorial jurisdiction in this case. Two principles of international law permitting extraterri orial jurisdiction are potentially relevant: the territorial principle and the passive personality principle. Under the territorial principle, the United States may assert jurisdiction when acts performed outside of its borders have detrimental effects within the United States. *See Hill*, 279 F.3d at 739; *Felix–Gutierrez*, 940 F.2d at 1205; *Restatement (Third) of Foreign Relations Law of the United States* § 402(1)(c) (1987). The sexual contact oc-curred during a cruise that originated and terminated in California. Neil's conduct prompted an investigation by the FBI, and an agent arrested Neil in the United States. The victim was an American citizen who lives and goes to school in the United States, and who sought counseling in this country after the attack. These facts are enough to support jurisdiction under the territorial principle. *See Hill*, 279 F.3d at 739–40 (applying the territorial principle to find extraterritorial jurisdiction in a case involving a failure to make child support payments); *see also United States v. Roberts*, 1 F.Supp.2d 601, 608 (E.D.La.1998) (applying the territorial principle to find extraterritorial jurisdiction over a sexual assault on an American aboard a Carnival Cruise Lines ship); *United States v. Pizdrint*, 983 F.Supp. 1110, 1112–13 (M.D.Fla.1997) (applying the territorial principle to find extraterritorial jurisdiction over an assault on two people, one of whom was an American citizen, aboard a Carnival Cruise Lines ship).

■ Extraterritorial jurisdiction is also appropriate under the passive personality principle. Under this principle, a state may, under certain circumstances, assert jurisdiction over crimes committed against its nationals. We have previously sustained jurisdiction based on the passive personality principle. *See, e.g., Hill*, 279 F.3d at 740 (applying the passive personality principle to find extraterritorial jurisdiction when the victims of the defendant's failure to make child support payments were American citizens); *Felix–Gutierrez*, 940 F.2d at 1206 (applying territorial, protective, and passive personality principles "cumulatively" to find extraterritorial jurisdiction over a prosecution of a Mexican national for assisting in the kidnapping and murder of an American Drug Enforcement Agency agent in Mexico).

Neil contends that the passive personality principle is inappropriate in this case based on our discussion in *United States v. Vasquez–Velasco*, 15 F.3d 833 (9th Cir. 1994). In that case, two American tourists had been murdered in Mexico by members of a drug cartel. We held that the passive personality principle applied because the defendants believed that the two Americans were agents of the federal Drug Enforcement Agency, but we wrote that "[i]f the evidence at trial only suggested that two tourists were randomly murdered, extraterritorial application of § 1959 would be inappropriate." *Id.* at 841. Citing the *Restatement*, we noted that, in general, the passive personality principle has not been accepted as a sufficient basis for extraterritorial jurisdiction over ordinary torts and crimes. *See id.* at 841 n. 7 (citing *Restatement (Third) of Foreign Relations Law of the United States* § 402 cmt. g).

Neil overreads our statements in *Vasquez–Velasco*. The defendants in that case were charged with committing violent crimes in aid of a racketeering enterprise under 18 U.S.C. § 1959. Unlike § 2244, that statute does not explicitly state that it applies extraterritorially, and we were obliged to infer an intent to exercise extraterritorial jurisdiction. We therefore construed the statute somewhat narrowly, stating that we did not believe that Congress intended to invoke the passive personality principle in § 1959, and thereby to criminalize extraterritorial crimes against all Americans under that statute. By contrast, § 2244(a)(3) relies on § 7(8), which invokes the passive personality principle by explicitly stating its intent to authorize extraterritorial jurisdiction, to the extent permitted by international law, when a foreign vessel departs from or arrives in an American port and an American national is a victim. We conclude that the passive personality principle is appropriately invoked to justify the exercise of extraterritorial jurisdiction in the circumstances specified in the statute.

**AFFIRMED.**