UNITED STATES of America,
Plaintiff,

v.

Dwain D. WILLIAMS, Defendant.

Case No.: 7:09–CR–8 (WLS).

United States District Court,
M.D. Georgia,
Valdosta Division.

July 1, 2010.

James N. Crane, Albany, GA, Mi Yung Claire Park, U.S. Department of Justice, Washington, DC, for Plaintiff.

Federal Defender, Morad Fakhimi, Middle District of Georgia, Inc., Macon, GA, Demetria Nicole Williams, Federal Defenders of MDGA, Albany, GA, for Defendant.

SANDS, District Judge.

Before the Court is Defendant DWAIN D. WILLIAMS's Motion to Dismiss Indictment. (Doc. 37). For the following reasons, Defendant's Motion to Dismiss Indictment (Doc. 37) is **DENIED.**

## *PROCEDURAL BACKGROUND*

In July 2009, a Middle District of Georgia grand jury returned a two-count Indictment charging Defendant with, in Count One, aggravated sexual abuse of a child (18 U.S.C. § 2241(c)) and, in Count Two, abusive sexual contact with a child (18 U.S.C. § 2244(a)(1) and (5)). (Doc. 1). The Indictment states that the alleged crimes occurred in and around Okinawa, Japan, while Defendant, a United States citizen, was accompanying a member of the United States Armed Forces outside of the United States, and that the United States's extraterritorial criminal jurisdiction is permitted by the Military Extraterritorial Jurisdiction Act of 2000, 18 U.S.C. § 3261. (*Id.*).

Following Defendant's arrest, the Court appointed the Federal Defender to represent Defendant. (Doc. 11). On November 5, 2009, Defendant filed the instant Motion to Dismiss Indictment. (Doc. 37). An Addendum thereto was filed on November 8, 2009. (Doc. 38). Following the Court's granting of an extension of time to respond (Doc. 40) and an extension of page length (Doc. 43), the Government filed its Memorandum in Opposition on December 11, 2009. (Doc. 41).

The grand jury returned a Superseding Indictment in May 2010, charging three

counts against Defendant. (Doc. 57). Count One charges Defendant with traveling in foreign commerce from the United States to Japan and engaging in illicit sexual conduct (18 U.S.C. § 2423(c) and (e) i/c/w 18 U.S.C. § 2243(a)(1) and (2)). (*Id.* at ¶¶ 3–4). Count Two renews and expounds upon Count One of the original Indictment, charging a violation of 18 U.S.C. § 2241(c), and expressly states the alleged facts that the Government contends provide for extraterritorial criminal jurisdiction under the Military Extraterritorial Jurisdiction Act. (*Id.* at ¶¶ 5–8). Count Three likewise renews and expounds upon Count Two of the original Indictment, charging a violation of 18 U.S.C. § 2244(a)(1) and (5), and makes the same express statement of facts allegedly establishing the United States's extraterritorial jurisdiction. (*Id.* at ¶¶ 9–12).

On June 25, 2010, Defendant filed a Notice to Renew Defendant's Motion, stating that Defendant's Motion to Dismiss Indictment (Doc. 37) is renewed as it relates to the Superseding Indictment (Doc. 57). (Doc. 66).

### FACTUAL SUMMARY [1]

In summary, the Superseding Indictment alleges that Defendant is an American citizen who, after having traveled in foreign commerce to Japan, engaged in and attempted to engage in sexual acts and caused sexual contact with a female child there from mid–2004 to mid–2007 or mid–2008. Defendant was allegedly in Japan while accompanying and residing with his wife, who was stationed in Japan with the United States Air Force. The female child described in the Superseding Indict-

ment is allegedly Defendant's step-daughter.

In July 2008, Defendant's family allegedly returned to Lanier County, Georgia, due to Defendant's wife's alleged reassignment to Moody Air Force Base. Sometime thereafter, Defendant's step-daughter allegedly moved in with her grandmother in Pelham, Georgia. These locations are in the Middle District of Georgia.

The alleged sexual acts allegedly occurred in secrecy in Japan. Defendant's wife allegedly came to know of the alleged sexual acts after Defendant's step-daughter allegedly attempted suicide at her grandmother's residence in Pelham, Georgia, on May 16, 2009. Defendant was allegedly working in Afghanistan on that date.

Following the grand jury's return of the original Indictment (Doc. 1) on July 14, 2009, an arrest warrant (Doc. 3) issued on the same date. Defendant surrendered to authorities and was arrested in Mitchell County, Georgia (*see* Doc. 9 at 1), which is located in the Middle District of Georgia.

### DISCUSSION

Defendant's Motion to Dismiss Indictment (Doc. 37), Addendum thereto (Doc. 38), and Notice thereto (Doc. 66) combine to attack the constitutionality of the Military Extraterritorial Jurisdiction Act of 2000 ("MEJA"), 18 U.S.C. § 3261. According to its legislative history, the MEJA "establish[es] Federal jurisdiction over offenses committed outside the United States by persons employed by or accompanying the Armed Forces." H.R.Rep. No. 106–778, pt. 1, at 1 (2000).[2]

---

1. The alleged facts relevant to the Court's decision on the instant Motion (Doc. 37) are derived from the Superseding Indictment (Doc. 57) and Statement of Facts provided in the Government's Memorandum in Opposition to Defendant's Motion to Dismiss Indictment. (Doc. 41 at 1–6). Defendant's Motion

to Dismiss Indictment (Doc. 37) and Addendum thereto (Doc. 38) glean few facts.

2. The House Report is available online at http://frwebgate.access.gpo.gov/cgi-bin/getdoc.cgi?dbname=106_cong_reports&

The Superseding Indictment states that the MEJA is the jurisdictional basis for the acts alleged to have occurred in Japan in Counts Two and Three. (Doc. 57 at ¶¶ 5–12). Defendant asserts that because the MEJA is unconstitutional both facially and as applied, the Superseding Indictment (Doc. 57) should be dismissed.

Before delving into Defendant's argument, the Court must address a disconnect between Defendant's Motion (Docs. 37, 38, 66) and the Superseding Indictment (Doc. 57). While Counts Two and Three expressly rely upon the MEJA for jurisdiction (*see* Doc. 57 at ¶¶ 5–12), Count One of the Superseding Indictment—the Count not found in the original Indictment (*compare* Doc. 1 *with* Doc. 57)—does not appear to use the MEJA as its jurisdictional basis but rather appears to rest on the jurisdictional hook contained in the predicate criminal statute, 18 U.S.C. § 2423(c) and (e). (Doc. 57 at ¶¶ 3–4). Defendant's Motion (Docs. 37, 38, 66) is silent as to § 2423, and thus seems to concede that Count One is proper and should not be dismissed. (*See generally* Docs. 37, 38, 66).[3] However, given the applicability of Defendant's Sixth Amendment compulsory process and venue arguments to § 2423, the Court will analyze Count One in light of Defendant's Sixth Amendment arguments.

Defendant asserts three grounds for the unconstitutionality of the MEJA, two of which the Court will also apply to 18 U.S.C. § 2423. First, applied only to the MEJA, Defendant argues that Congress improperly extended beyond its enumerated powers in enacting the MEJA. (Doc. 37 at 6–7; Doc. 38 at 1–5). Defendant asserts that none of the provisions of Article I or Article III of the Constitution permit Congress's attempt at extraterritorial criminal jurisdiction as embodied in the MEJA. (*Id.*). Second, Defendant contends that the MEJA (and § 2423) violates his Sixth Amendment right "to have compulsory process for obtaining witnesses in his favor," U.S. Const. amend. VI, because "this Court's power to compel the presence of those witnesses located in Japan simply does not exist." (Doc. 37 at 8; *see also* Doc. 37 at 1–15). Third, Defendant argues that the MEJA (and § 2423) violates the venue provision of the Sixth Amendment. (Doc. 37 at 1, 11–12, 15).

The Government's Memorandum in Opposition (Doc. 41) contends that the MEJA is a proper exercise of Congress's power under the Constitution, and that the MEJA (and § 2423) does not violate Defendant's Sixth Amendment rights to compulsory process and venue. (Doc. 41 at 7–29). Therefore, the Government argues that Defendant's Motion to Dismiss Indictment (Doc. 37) should be denied.

The Court finds no merit in Defendant's advocated grounds for dismissal. The Court will first address Defendant's facial challenge to the MEJA *vis-à-vis* Congress's enumerated powers, followed by his as-applied challenge to the MEJA (and § 2423) *vis-à-vis* his Sixth Amendment rights to compulsory process and venue. The Court's conclusion is to deny Defendant's Motion to Dismiss (Doc. 37).

### 1. *Congress's Extraterritorial Powers*

Defendant asserts that Congress lacked constitutional authority under any of its enumerated powers to enact the MEJA, allegedly rendering the MEJA unconstitutional on its face. Such a "facial challenge

---

docid=f:hr778p1.106.pdf (last visited June 30, 2010).

**3.** Should Defendant wish to raise a facial challenge to 18 U.S.C. § 2423(c), the Court

merely observes the lack of success in such a venture met by the defendant in *United States v. Strevell,* 185 Fed.Appx. 841 (11th Cir.2006).

to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid." *United States v. Salerno,* 481 U.S. 739, 745, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987). Defendant's Motion (Doc. 37) states that no part of Articles I or III of the Constitution provide Congress the power to establish the Federal Courts's jurisdiction over crimes committed by civilians accompanying the Armed Forces overseas, and Defendant's Addendum (Doc. 38) attempts to explain why none of the Article I, section 8 clauses listed in the MEJA House of Representatives Report's "Constitutional Authority Statement"[4] can serve to validate the MEJA's extraterritorial reach under any set of circumstances.

Defendant's focus on Congress's enumerated powers in the context of the MEJA, however, is misplaced. No doubt, Defendant advances his argument on the notion that "the federal government can exercise no powers except those specifically enumerated in the Constitution, and such implied powers as are necessary and proper to carry into effect the enumerated powers." *United States v. Curtiss–Wright Export Corp.,* 299 U.S. 304, 315–16, 57 S.Ct. 216, 81 L.Ed. 255 (1936); *see United States v. Comstock,* —— U.S. ——, 130 S.Ct. 1949, 1956–58, 176 L.Ed.2d 878 (2010) (surveying history of Necessary and Proper Clause). But the Supreme Court explains that "[t]he broad statement ... is categorically true only in respect of our internal affairs." *Curtiss–Wright,* 299 U.S. at 315–16, 57 S.Ct. 216. The Supreme Court has long recognized "differ-

ences between the powers of the federal government in respect of foreign or external affairs and those in respect of domestic or internal affairs" and the Supreme Court provides "that these differences are fundamental." *Id.* at 315, 57 S.Ct. 216. In the field of internal affairs, the Supreme Court explains, "the primary purpose of the Constitution was to carve from the general mass of legislative powers *then possessed by the states* such portions as it was thought desirable to vest in the federal government, leaving those not included in the enumeration still in the states." *Id.* at 316, 57 S.Ct. 216 (emphasis in original). But looking to external affairs, "since the states severally never possessed international powers, such powers could not have been carved from the mass of state powers but obviously were transmitted to the United States from some other source." *Id.* That source is the United States's own sovereignty. *Id.* Thus, "Congress unquestionably has the authority to enforce its laws beyond the territorial boundaries of the United States." *United States v. Plummer,* 221 F.3d 1298, 1304 (11th Cir. 2000); *see also United States v. Baker,* 609 F.2d 134, 136 (5th Cir.1980) ("Since an early date, it has been recognized that Congress may attach extraterritorial effect to its penal enactments.").[5] Ultimately, "[t]here is no constitutional bar to the extraterritorial application of penal laws." *United States v. King,* 552 F.2d 833, 850 (9th Cir.1976).

The only question regarding Congress's seemingly expansive extraterritorial authority is "[w]hether Congress has in fact exercised that authority" in enacting a particular statute, such as the

---

4. H.R.Rep. No. 106–778, pt. 1, at 14 (2000) ("Pursuant to clause 3(d)(1) of rule XIII of the Rules of the House of Representatives, the committee finds the authority for this legislation in Article I, section 8, clauses 10, 14, 16, and 18 of the Constitution.").

5. In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

MEJA. *Plummer*, 221 F.3d at 1304. This determination "is an issue of statutory construction." *Nieman v. Dryclean U.S.A. Franchise Co., Inc.*, 178 F.3d 1126, 1129 (11th Cir.1999). The presumption is "that legislation of Congress, unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States," which is "based on the assumption that Congress is primarily concerned with domestic conditions." *Foley Bros., Inc. v. Filardo*, 336 U.S. 281, 285, 69 S.Ct. 575, 93 L.Ed. 680 (1949). The task of the Court is "to determine whether Congress intended the [MEJA] to apply to United States citizens engaged in conduct outside of the United States." *Plummer*, 221 F.3d at 1304. For "[i]f punishment of [crimes against private individuals or their property] is to be extended to include those committed outside of the strict territorial jurisdiction, it is natural for Congress to say so in the statute, and failure to do so will negative the purpose of Congress in this regard." *United States v. Bowman*, 260 U.S. 94, 98, 43 S.Ct. 39, 67 L.Ed. 149 (1922). "Generally, courts will give extraterritorial effect to penal statutes where congressional intent is clear." *United States v. MacAllister*, 160 F.3d 1304, 1307 (11th Cir.1998).

■ The Court finds that Congress clearly intended the MEJA to apply extraterritorially. It would be ludicrous to argue that a statute entitled the "Military Extraterritorial Jurisdiction Act," which expressly criminalizes certain "conduct outside the United States," 18 U.S.C. 3261(a), lacks clear Congressional intent for extraterritorial effect. Defendant concedes the point, stating that "the Act under which [Defendant's] case was brought into this Court is absolutely unambiguous in its intent to reach onto foreign soil." (Doc. 37 at 13). To erase any doubt, the MEJA's legislative history contains a plethora of references to extraterritoriality. *See* H.R.Rep. No. 106–778, pt. 1 (2000).

■ Before finding the MEJA to be a proper exercise of Congress's extraterritorial power, however, the Court must "consider whether [giving extraterritorial effect to the penal statute] would violate general principles of international law." *MacAllister*, 160 F.3d at 1308 (citing *United States v. Vasquez–Velasco*, 15 F.3d 833, 839 (9th Cir.1994)). "The law of nations permits the exercise of criminal jurisdiction by a nation under five general principles: (1) the 'objective' territorial,[6] (2) the national,[7] (3) the protective,[8] (4) the universal,[9] and (5) the passive personality.[10]" *Id.*

**6.** "The objective territorial principle applies where the defendant's actions either produced some effect in the United States, or where he was part of a conspiracy in which any conspirator's overt acts were committed within the United States' territory." *MacAllister*, 160 F.3d at 1308 (citing *Baker*, 609 F.2d at 138).

**7.** "[T]he 'nationality' principle ... permits a state to exercise criminal jurisdiction over one of its nationals." *Plummer*, 221 F.3d at 1307 (citing *Rivard v. United States*, 375 F.2d 882, 885 & 886 n. 6 (5th Cir.1967)).

**8.** "Under the [protective principle], jurisdiction is based on whether the national interest is injured." *United States v. Benitez*, 741 F.2d 1312, 1316 (11th Cir.1984).

**9.** According to Eleventh Circuit precedent, "[c]ustody of the offender gives jurisdiction under [the universality] principle." *Rivard*, 375 F.2d at 885 n. 8. A more robust definition comes from the Second Circuit, which provides that "[t]he universality principle permits a State to prosecute an offender of any nationality for an offense committed outside of that State and without contacts to that State, but only for the few, near-unique offenses recognized by the 'civilized nations' as an offense against the 'Law of Nations.'" *United States v. Yousef*, 327 F.3d 56, 103 (2d Cir.2003).

**10.** "[U]nder the [passive personality principle], jurisdiction is based on the nationality or national character of the victim." *Benitez*, 741 F.2d at 1316.

at 1308 n. 9 (citing *United States v. Benitez*, 741 F.2d 1312, 1316 (11th Cir.1984)). "Extraterritorial application of penal laws may be justified under any one of these five principles." *Id.*

The Government proposes that the MEJA as applied to Defendant is consistent with all but the "protective" principle of international law. (Doc. 41 at 13). The Court finds that extraterritorial jurisdiction is permitted by all but the "universal" principle of international law. Although not occurring immediately, Defendant's alleged actions in Japan produced some effect in the United States upon the alleged victim's return to Georgia, thus satisfying the objective territorial principle. *See United States v. Neil*, 312 F.3d 419, 422 (9th Cir.2002) (holding that jurisdiction under the territorial principle was supported by facts where "[t]he sexual contact occurred during a cruise that originated and terminated in California[;] Neil's conduct prompted an investigation by the FBI, and an agent arrested Neil in the United States[; and] [t]he victim was an American citizen who lives and goes to school in the United States, and who sought counseling in this country after the attack"). The national principle clearly applies, as it has not been disputed that Defendant is an American citizen. *See United States v. Frank*, 599 F.3d 1221 (11th Cir.2010) ("Jurisdiction exists under the 'nationality' principle[.] ... Because Frank is a United States citizen, the United States properly exercised jurisdiction over him."). The protective principle also applies, because the national interest is injured when people accompanying members of the Armed Forces overseas commit crimes there or are victimized by crime there.

*See* H.R.Rep. No. 106–778, pt. 1, at 10 (2000) (describing national interests implicated in "The Need for Legislation" as to the MEJA, including military morale and foreign relations). And the passive personality principle is implicated here, due to the alleged victim's United States citizenship. The universality principle is not touched under these facts, because child sexual abuse does not currently appear to be recognized as an offense against the "Law of Nations." *See generally United States v. Yousef*, 327 F.3d 56, 103–08 (2d Cir.2003) (describing universality principle).

Because Congress clearly intended the MEJA to be applied extraterritorially, and because such extraterritorial application of the MEJA would not offend international law, the Court finds that the MEJA is a proper application of Congress's extraterritorial power. Defendant's Motion to Dismiss Indictment (Doc. 37) is **DENIED** to the extent Defendant asserts that the MEJA is an improper application of Congress's legislative authority.

### 2. Sixth Amendment Compulsory Process in Extraterritorial Cases

■ Defendant argues that, as applied to him, the MEJA (and 18 U.S.C. § 2423) violates his Sixth·Amendment right "to have compulsory process for obtaining witnesses in his favor," U.S. Const. amend. VI, because this Court possesses no subpoena power over foreign witnesses. While it is true that "the United States courts lack power to subpoena witnesses[ ] (other than American citizens) from foreign countries," *United States v. Zabaneh*, 837 F.2d 1249, 1259–60 (5th Cir.1988),[11] the

---

**11.** *See also United States v. Paracha*, No. 03 CR. 1197(SHS), 2006 WL 12768, at *5 (S.D.N.Y. Jan. 3, 2006) (citing *Zabaneh* in support of proposition that "the subpoena power of the Court-the power generally in-

voked to compel the presence of witnesses at trial pursuant to Fed.R.Crim.P. 17(b)-does not extend to foreign nationals outside the United States").

law clearly does not support Defendant's assertion of a constitutional violation for two reasons.

First, the Court finds no violation of Defendant's Sixth Amendment right to compulsory process because, as stated by the Fifth Circuit, the "constitutionally protected right of compulsory process ... does not ordinarily extend beyond the boundaries of the United States." *Zabaneh*, 837 F.2d at 1260; *see also id.* at 1259–60 ("It is well established ... that convictions are not unconstitutional under the Sixth Amendment even though the United States courts lack power to subpoena witnesses[ ] (other than American citizens) from foreign countries."). The Second Circuit articulated that "the Sixth Amendment can give the right to compulsory process only where it is within the power of the federal government to provide it," based on the logic that "[o]therwise any defendant could forestall trial simply by specifying that a certain person living where he could not be forced to come to this country was required as a witness in his favor." *United States v. Greco,* 298 F.2d 247, 251 (2d Cir.1962). Citing both *Zabaneh* and *Greco*, the District of Columbia Circuit found that "[i]t is well settled that a defendant's inability to subpoena foreign witnesses is not a bar to criminal prosecution." *United States v. Sensi,* 879 F.2d 888, 899 (D.C.Cir.1989). Although the Eleventh Circuit has not yet released an opinion on the issue, presently on appeal is a decision by the Southern District of Florida citing *Sensi* and *Greco* in finding the defendant's extraterritorial compulsory process argument—identical to Defendant's argument here—to be "unavailing." *United States v. Emmanuel,* No. 06–20758–CR, 2007 WL 2002452, at *17 (S.D.Fla. July 5, 2007), *appeal docketed sub nom., United States v. Roy M. Belfast, Jr.,* No. 09–10461–AA (11th Cir. Jan. 29, 2009). The Court finds that Defendant enjoys no Sixth Amendment right to compulsory process of foreign witnesses.

Second, the Supreme Court observes that "the Sixth Amendment does not by its terms grant to a criminal defendant the right to secure the attendance and testimony of any and all witnesses: it guarantees him 'compulsory process for obtaining *witnesses in his favor.*'" *United States v. Valenzuela–Bernal,* 458 U.S. 858, 867, 102 S.Ct. 3440, 73 L.Ed.2d 1193 (1982) (quoting U.S. Const. amend. VI) (emphasis in original). Therefore, a violation of Sixth Amendment compulsory process is established only when the criminal defendant shows the deprivation "of 'testimony [that] would have been *relevant* and *material,* and ... *vital* to the defense.'" *Id.* (quoting *Washington v. Texas,* 388 U.S. 14, 16, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967)) (emphasis and alteration in original). Thus, a criminal defendant "must at least make some plausible showing of how [an absent witness's] testimony would have been both material and favorable to his defense." *Id.* In examining Defendant's Motion (Doc. 37) and Addendum thereto (Doc. 38), the Court finds no attempt by Defendant to name any witness who would be material and favorable to his defense, let alone any showing by Defendant regarding said witness's materiality and favorability. (*See generally* Docs. 37, 38). The Court therefore finds no Sixth Amendment compulsory process violation here, notwithstanding the extraterritoriality exception already described above.

Because the Court finds that the MEJA (and § 2423), as applied to Defendant, does not violate Defendant's right to Sixth Amendment compulsory process, Defendant's Motion to Dismiss Indictment (Doc. 37) is **DENIED** to the extent Defendant asserts the same.

### 3. Sixth Amendment Venue in Extraterritorial Cases

Finally, Defendant argues that, as applied to him, the MEJA (and 18 U.S.C. § 2423) violates his Sixth Amendment right to trial in "the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law." U.S. Const. amend. VI. Defendant asserts that because the alleged crimes occurred in Japan, venue is constitutionally improper in the Middle District of Georgia. (Doc. 37 at 11–12). The Court finds Defendant's argument unavailing.

■ "The Constitution, the Sixth Amendment, and Rule 18 of the Federal Rules of Criminal Procedure guarantee defendants the right to be tried in the district in which the crime was committed." *United States v. Breitweiser*, 357 F.3d 1249, 1253 (11th Cir.2004). The Constitution, however, recognizes that some crimes are "not committed within any state." U.S. const. art. III, § 2. In such instances, the Constitution provides that "when not committed within any state, that trial shall be at such place as the Congress may by law have directed." *Id.*; *see also* U.S. Const. amend. VI. (providing the right to trial in "which district shall have been previously ascertained by law"). Thus, the Court finds no constitutional bar to venue within the United States for the trial of crimes committed abroad—on the contrary, venue in this context is expressly authorized by the Constitution. *See Reid v. Covert*, 354 U.S. 1, 47 n. 2, 77 S.Ct. 1222, 1 L.Ed.2d 1148 (1957).

The Court also finds that venue is proper in the Middle District of Georgia. The Superseding Indictment alleges that "[t]he conduct alleged in this Indictment occurred outside the jurisdiction of any particular State or District and within the venue of the United States District Court for the Middle District of Georgia, as pro-vided by 18 U.S.C. Section 3238." (Doc. 57 at ¶ 1). Pursuant to 18 U.S.C. § 3238, Congress has provided that:

> The trial of all offenses begun or committed ... elsewhere out of the jurisdiction of any particular State or district, shall be in the district in which the offender ... is arrested or is first brought; but if such offender ... [is] not so arrested or brought into any district, an indictment or information may be filed in the district of the last known residence of the offender....

18 U.S.C. § 3238; *see U.S. v. Stickle*, 454 F.3d 1265, 1272 (11th Cir.2006). Because Defendant's alleged criminal acts all occurred outside of the United States, the venue provision of § 3238 applies. And under § 3238, venue is proper in the Middle District of Georgia because this District was the District in which Defendant was arrested and was Defendant's last known residence.

Because the Court finds that the MEJA (and § 2423), as applied to Defendant, does not violate Defendant's right to venue under the Sixth Amendment, and because the Court finds venue in this District to be proper, Defendant's Motion to Dismiss Indictment (Doc. 37) is **DENIED** to the extent Defendant asserts the same.

### CONCLUSION

For the foregoing reasons, Defendant DWAIN D. WILLIAMS's Motion to Dismiss Indictment (Doc. 37) is **DENIED**.